# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ALPHAGO XAVIER PENN-WHITE | § § | |
| V. | § § | CASE NO. 4:15-CV-640 |
| | § | Judge Mazzant/Judge Johnson |
| BOYS AND GIRLS CLUB OF DENISON, INC. | § § § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to Magistrate Judge Kimberly Priest Johnson pursuant to 28 U.S.C. § 636. On November 10, 2016, the report of Magistrate Judge Johnson (Dkt. #36) was entered containing proposed findings of fact and recommendations that Defendant's motion for summary judgment (Dkt. #22) should be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff filed objections to the portions granting summary judgment (Dkt. #39) and Defendant filed objections to the portions denying summary judgment (Dkt. #38).

Having reviewed the report of the Magistrate Judge (Dkt. #36), having considered Plaintiff and Defendant's timely filed objections (Dkts. #38, 39), and having conducted a *de novo* review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the Magistrate Judge's report (Dkt. #36) as the findings and conclusions of the Court.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Boys and Girls Club of Denison (the "Club") is a non-profit organization led by a Board of Directors (the "Board"). The Club employs a number of staff members, who are headed by a "Chief Professional Officer" (the "CPO"), alternatively referred to as the "Executive Director." (Dkt. #22 at p. 3). In 2013, the Club formed a search committee to fill a job vacancy for its CPO position comprised of Donald Banman, Kathy Wilburn, Janet Brown, Alvin Bailey, Dave Reed, Malissia Hysmith, Angie Patton, Tim Neal, and led by Laura Wright and Judith Donahue (collectively, the "Committee") (Dkt. #22 at p. 3). Mike Coffman, a retired former CPO, was selected as the interim CPO.

Laura Wright created an online job posting and vacancy notice for the CPO position and posted it to the Boys and Girls Club of America website and other job posting websites (Dkt. #22 at p. 3). Relevant portions of the notice are presented as follows:

Job Summary

The Boys and Girls Club of Denison Texas is seeking a dedicated, career-oriented Chief Professional Officer to lead the organization in fulfilling its mission of providing the needed leadership, guidance, and inspiration that will help young girls and boys grow up to be responsible adults. For a candidate to be successful, a bachelor's degree from an accredited college or university is preferred. A minimum of eight years work experience in a non-profit agency or Boys and Girls Club which included management and supervision with at least two years in a leadership capacity or an equivalent combination of experience is required.

Job Requirements

The candidate needs to show a demonstrated record of community based achievement, and successful experience in raising funds. This position requires a working knowledge of youth related issues, strong fiscal management skills, and excellent speaking, writing, marketing and public relations skills. This candidate must also have a demonstrated ability to oversee a budget and the ability to maintain effective working relationships with the board of directors, staff, community volunteers, and agency funding sources. Additionally the candidate will need to meet standard physical requirements for working with active children. . . .

>Posting Date: 7/12
>Closing Date: 8/12
>Application submitted by: Judith Donahue, HR Chair
>Contact for resumes: Laura Wright
>E-mail: laura.wright@manpower.com

(Dkt. #25, Ex. 16 at p. 2).

Alphago Xavier Penn-White (the "Plaintiff") is an African American male who resided in Denison at the time of the CPO job posting (Dkt. #1 at p. 1; Dkt. #25, Ex. 2 at p. 3). According to Plaintiff's resume, after graduating from Denison Senior High School in 1977, Plaintiff obtained a bachelor's and a master's degree in physical education from Southeastern Oklahoma State University (Dkt. #25, Ex. 2 at p. 3). Plaintiff's resume cites a variety of job experiences, including: one year as a professional football player with the New Orleans Saints, a little more than a year as an athletic and program director for the Salvation Army Boys Club in Denison, Texas, a year as a school teacher and assistant coach for the Sherman Independent School District, two years as a teacher and head football coach for Atoka Public School in Atoka, Oklahoma, three years as a recreational coach for Howard McLeod Correctional Center in Atoka, Oklahoma, and twelve years as an athletic and recreation coordinator for the City of Sherman (Dkt. #25, Ex. 2 at pp. 2-3).

According to the deposition of Diane Beeson, a Board member with the Club, she had a conversation with Plaintiff in the summer of 2013, before August, in which she notified him of the CPO job search and told Plaintiff that, if he was interested in the job, he needed to apply (Dkt. #25, Ex. 4 at p. 4). Ms. Beeson stated that she told Plaintiff "he had to either go to the Boys [and] Girls Club or go to the website." (Dkt. #25, Ex. 4 at p. 5).

A point of contention in this case is the submission of Plaintiff's resume. Plaintiff alleges that, during the period the CPO position was open, he met with Mr. Coffman and discussed the

3

position (Dkt. #25, Ex. 3 at p. 4). Plaintiff contends that Mr. Coffman told Plaintiff about his experience working for Boys and Girls Club of America, and about a good friend that he felt would be ideal for the job, but whom he thought the Board would not hire because he was "an older guy." (Dkt. #25, Ex. 3 at p. 4). Plaintiff asserts that later in July, he went back to the Denison Boys and Girls Club and met with Mr. Coffman to turn in his resume, recounting:

> I walked in and went back to the door and to his office and knocked on the door and he was sitting there. I said I'm turning in my resume for the position. He took it and said thanks.

(Dkt. #25, Ex. 3 at p. 5). Plaintiff contends that he contacted Board members Ms. Beeson and Jimmy Rosser, Club employee Larry Pascal, and Committee member Mr. Neal and told them that he had applied for the CPO position (Dkt. 25, Ex. 1 at p. 5). Though Mr. Neal could not remember during his deposition that he had a conversation with Plaintiff, he admitted that his telephone number was included in Plaintiff's phone records for a three-minute call on August 5, 2013—several days prior to the application closing date and after the date Plaintiff claims to have turned in his application to Mr. Coffman (Dkt. #25, Ex. 7). Mr. Rosser testified in his deposition that he had a conversation in which Plaintiff told him that he had applied for the CPO position (Dkt. #25, Ex. 5 at p. 6).

Mr. Coffman, in his deposition, testified that no one physically handed a CPO application to him during the application window (Dkt. #25, Ex. 9 at p. 4). Mr. Coffman affirmed that, if he had received an application, he would have given it to the head of the Committee or Tim [Neal], the Board president (Dkt. #25, Ex. 9 at p. 4). When asked specifically if he would have told the applicant he would need to submit the application online, Mr. Coffman confirmed that submission online was not a requirement (Dkt. #25, Ex. 9 at p. 4). Mr. Coffman insisted, however, that he never met Plaintiff, and he was only familiar with Plaintiff as a football coach

4

he occasionally saw on Saturday mornings when helping at a snack bar and around the football field (Dkt. #25, Ex. 9 at p. 4).

According to the Club, Ms. Wright, as the listed contact for resumes, received approximately forty-one applications for the CPO position at the e-mail address listed on the job posting (Dkt. #22 at p. 4). Ms. Wright, Ms. Donahue, and Committee member Mr. Reed narrowed the pool before presenting the selected candidates to the rest of the Committee to consider (Dkt. #22 at p. 4). The pool was then narrowed to approximately seven candidates (Dkt. #22 at p. 4).

On the final day of the application window, August 12, 2013, Tim Neal, Committee member and then president of the Board at the Club, contacted the rest of the Committee and conveyed he had received calls from local business people asking if the interview process for the CPO position was still open, and was specifically asked if the Board would consider Plaintiff (Dkt. #22 at p. 4). Committee leader Ms. Donahue stated in her deposition that, at the time of these inquiries, the Committee did not have Plaintiff's resume (Dkt. 22, Ex. B at p. 3). The next day, August 13, 2013, Ms. Donahue told Mr. Neal that the Committee would review Plaintiff's resume with the other applications received during the posting period (Dkt. #22 at p. 4). Ms. Donahue asked Mr. Neal to forward Plaintiff's resume, but Mr. Neal replied that he did not have it (Dkt. #22 at p. 4).

On August 13, 2013, and August 15, 2013, another Committee member, Mr. Banman, sent emails to Ms. Donahue and Ms. Wright regarding his knowledge of Plaintiff and belief that he should be considered for the position (Dkt. #22 at p. 5). Ms. Donahue responded to Mr. Neal and Mr. Banman specifically, and the Committee generally, that Plaintiff's resume had never been received (Dkt. #22 at p. 5). Ms. Donahue, in her deposition, asserted that the Committee

never received Plaintiff's resume (Dkt. #22, Ex. B at p. 3). The Club asserts that, because the Committee never received Plaintiff's application or resume, he was not considered by the Committee as an applicant or candidate for the CPO position.

After narrowing the candidates to two, one of the candidates removed herself from consideration (Dkt. #22 at p. 6). The Club asserts that, at this time, the Committee "became aware" that a retired Boys and Girls Club Regional Director named Tom Hough was interested in applying for the CPO position (Dkt. #22 at p. 6). According to Mr. Banman, Mr. Coffman indicated that he knew Tom Hough and indicated that he would be a good candidate for the position (Dkt. #22, Ex. 3 at p. 5). The Committee reviewed Mr. Hough's resume and additional information and invited him to interview (Dkt. #22 at p. 7). The Board of the Club ultimately selected Mr. Hough for the CPO position (Dkt. #22 at p. 7). The Club asserts that Mr. Hough was more qualified than any other candidate it had considered, as he had years of experience as a regional director and CPO of other Boys and Girls Clubs, had worked with Boys and Girls Club of America for over fifteen years, had run a Club before, and knew how to fundraise (Dkt. #22 at p. 7).

Mr. Hough worked as CPO from November 2013 until resigning less than a year later, in June 2014 (Dkt. #22 at p. 7). The Club asserts that, during this time, Mr. Hough trained the sports director, Ron Nixon, to be a potential successor as CPO, culminating in a recommendation to the Board that Nixon be promoted to CPO (Dkt. #22 at p. 7). The board appointed Mr. Nixon as interim CPO for two months and subsequently promoted him to the position permanently (Dkt. #22 at p. 7).

On September 22, 2015, Plaintiff filed suit against the Club, asserting racial discrimination in both 2013 and 2014 and a retaliation claim (Dkts. #1, 13). On May 18, 2016,

the Club filed the present motion for summary judgment (Dkt. #22). On June 16, 2016, Plaintiff filed a response (Dkt. #25). On June 27, 2016, the Club filed a reply brief (Dkt. #29).

On November 10, 2016, the Magistrate Judge issued a report and recommendation advising granting in part and denying in part the motion for summary judgment (the "Report"). On November 28, 2016, Defendant filed objections (Dkt. #38), as did Plaintiff (Dkt. #39). On December 7, 2016, Defendant filed a response to Plaintiff's objections (Dkt. #42).

## ANALYSIS

*Defendant's Objections*

Defendant asserts the Magistrate Judge's denial of summary judgment was improper as to Plaintiff's 2013 claim of racial discrimination on two grounds: (1) Mr. Coffman was not a committee member and (2) Plaintiff failed to demonstrate pretext (Dkt. #38).

**1. Mr. Coffman**

Defendant objects to the Report's conclusion that Plaintiff raised a genuine issue of material fact rebutting the Club's assertion that it had a non-discriminatory reason for rejecting Plaintiff in 2013, namely, the Committee never received his resume or application (Dkt. #38 at p. 2). The Magistrate Judge found that Mr. Coffman served as a *de facto* Committee member, but Defendant contends that the summary judgment evidence does not reflect that Mr. Coffman was a Committee member and objects to the reasoning set forth in the Report as to why the Court should consider Mr. Coffman a member of the Committee (Dkt. #38 at pp. 2-3).

Despite Defendant's protestations, the Court finds that Mr. Coffman should be considered a *de facto* Committee member. Nothing in the job listing specified that an application must be submitted online (Dkt. #25, Ex. 16 at p. 2). In addition, Mr. Coffman himself stated in deposition testimony that the application process did not require an individual to apply online,

but rather, indicated delivery in person would have been sufficient (Dkt. #25, Ex. 9 at p. 4). Mr. Coffman acknowledged he would have acted as a recipient for the Committee—that if he had received an application in person he would have delivered it to the head of the Committee.

The Court understands that Defendant wishes to make a distinction between the role Mr. Coffman played and that of formal Committee members. However, the Court finds that the particular role Mr. Coffman played, or could have played due to his position as potential receiver of applications, renders him a *de facto* Committee member. Defendant, in essence, contends that the formal members outlined the boundaries of "The Committee" such that it could assert that the Committee never received Plaintiff's resume. However, in these circumstances, the process of receiving resumes extended beyond the boundaries of the Committee. Allowing an individual to apply by handing in an application to Mr. Coffman at the Boys and Girls Club brought Mr. Coffman into the process of resume consideration, which is the process Plaintiff's lawsuit challenges. Whether deliberate or entirely incidental, Mr. Coffman served as an application filter between the completion of an individual's application (at the moment of in-person delivery) and the full consideration of the application by the Committee. The fact that Mr. Coffman testifies he would have delivered any application he received to the Committee does not negate his role in the Committee selection process.

Further, individuals testified that Mr. Coffman was involved in the selection process. Committee member Kathy Wilburn stated in her deposition that it was Mr. Coffman who recommended Tom Hough due to his training and having worked with him in the past (Dkt. #25, Ex. 6 at p. 7). Committee leader Judy Donahue explained in her deposition that, after the closing date of applications and after the potential hiring list had been narrowed to less than three individuals, she had a conversation with Mr. Coffman in which he volunteered that he knew of

8

someone who might be interested in the CPO position and some of his qualifications (Dkt. #25, Ex. 8 at p. 13). Ms. Donahue testified she asked Mr. Coffman to tell this individual—Tom Hough—to provide his resume (Dkt. #25, Ex. 8 at p. 13). She further described that, though she did not have direct contact with Mr. Hough, she had contact through Mr. Coffman, and noted that Mr. Hough was "highly recommended." (Dkt. #25, Ex. 8 at p. 15). Mr. Hough was eventually hired as CPO.

As Mr. Coffman served as a possible end point for applications while working at the Club, recommended an additional candidate to the Committee leader after the close of the application period, and acted as an agent of the Committee leader by following a request to tell the perspective candidate to provide his resume, he should be considered a Committee member for the issue before the Court—whether Defendant's assertion that the Committee could not have made a racially motivated hiring decision because it did not receive Plaintiff's application is worthy of credence.

### 2. Pretext

Defendant contends that even if Mr. Coffman was a *de facto* Committee member who failed to give Plaintiff's resume to the rest of the Committee, there is no summary judgment evidence that leads to the reasonable inference that such failure was racially motivated (Dkt. #38 at pp. 3-4). Defendant cites *Sandstad v. CB Richard Ellis, Inc.*, for the premise that to demonstrate pretext to negate a legitimate, nondiscriminatory reason for rejecting the applicant, "the plaintiff must produce evidence to show that discrimination lay at the heart of the employer's decision or that the employer's explanation is false or *unworthy of credence*." 309 F.3d 893, 896-97 (5th Cir. 2003) (Dkt. #38 at p. 3) (emphasis added). The Court makes no finding as to the sufficiency of evidence to demonstrate discrimination, but rather finds the

employer's nondiscriminatory reason (that the Committee did not receive Plaintiff's application) is not worthy of credence given the role played by Mr. Coffman with respect to the application and consideration process, the testimony of Diane Beeson—Board member for Defendant—in which she stated that she specifically told Plaintiff it was acceptable to apply in person at the Club, Plaintiff's testimony regarding the delivery of his application to Mr. Coffman, phone records supporting Plaintiff's testimony that he handed in his application and called several individuals associated with Defendant to let them know he had applied, and testimony from Mr. Rosser that Plaintiff told him that he had applied for the position. The Court, therefore, finds that Defendant has not asserted a sufficient nondiscriminatory reason, and Defendant's motion for summary judgment as to Plaintiff's claims concerning the 2013 hiring should be denied.

*Plaintiff's Objections*

Plaintiff agrees with the recommendation that summary judgment be denied with regards to the 2013 hiring, but objects to the Report due to the fact that additional evidence was not relied upon in reaching the conclusion (Dkt. #39 at p. 2). Plaintiff presents no case law or argument that the court is required to rely upon all arguments or all presented material in making its determinations. The Court finds that the material relied upon in denying summary judgment as to claims regarding the 2013 hiring is sufficient, and neither the Magistrate Judge nor the Court need consider material regarding Carlos Daniels and Dale Rhodes, which Plaintiff contends "further buttresses" his claims (Dkt. #39 at p. 2).

Plaintiff asserts the recommendation of summary judgment was improper as to Plaintiff's 2014 claim of racial discrimination on the grounds that the Magistrate Judge failed to follow the summary judgment standard of considering all evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor (Dkt. #39 at p. 3). Specifically,

Plaintiff objects to the finding that Plaintiff did not present sufficient evidence to raise a genuine issue of material fact as to Defendant's presented nondiscriminatory reason for its decision not to hire Plaintiff.

Plaintiff does not object to the Report's finding that Defendant presented a legitimate, nondiscriminatory reason for its decision, namely, that the Defendant's Board wanted to promote Mr. Nixon, who had been trained for the position by Mr. Hough, and who they believed could continue the method of operation Mr. Hough had established during his time as CPO. Given that Defendant met its burden, the presumption of intentional discrimination dissolves and the plaintiff must then demonstrate either that a discriminatory reason more likely motivated the employer or the employer's reasons for rejecting the applicant are not worthy of credence, in other terms, that the nondiscriminatory reason is pretextual. *Id.* at 203 (citing *Tex. Dep't of Cmty. Affairs v. Burndine*, 450 U.S. 248, 255 n. 10 (1981). The plaintiff must raise a genuine issue of material fact to rebut each nondiscriminatory reason articulated by the employer. *Id.* at 202 (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Plaintiff proposed arguments and evidence in an attempt to rebut the nondiscriminatory reason, including the lack of documentation regarding training or evidence of unique practices. The Report states that "the lack of documentary evidence does not controvert the [Defendant's] proffered reason. Rather it suggests that whatever training was done may not have been formal and documented, but perhaps [was] limited to observation." (Dkt. #36 at p. 14). Plaintiff contends that this statement reflects an inference drawn in Defendant's favor.

The Court finds that the Report did not draw an inference in Defendant's favor. Rather, the Magistrate Judge's comment delineates that the lack of documentary evidence does not lead to the conclusion that Mr. Nixon was not trained by Mr. Hough.

The lack of documented training lends credence to an assertion that no documented training took place. If Defendant's nondiscriminatory reason turned on the documented training of Mr. Nixon, the lack of documented training would be extremely relevant. However, Defendant merely stated that Mr. Nixon had been trained for the position by Mr. Hough. Defendant did not assert this "training" was formal or merely observational, and the Court need not narrowly define "training" as only that which is documented.

Plaintiff also contends that the Report failed to refute evidence of "unexplained and *ex post facto* actions taken by [Defendant] in the hiring of Nixon for the 2014 CPO position." (Dkt. #39 at p. 4). Plaintiff cites a number of arguments made in his response to the Motion for Summary Judgement that he argues demonstrate pretext (Dkt. #39 at p. 5). None of the citations, however, serve to demonstrate that Defendant's nondiscriminatory reason—Defendant's Board wanted to promote Mr. Nixon, who had been trained for the position by Mr. Hough, and who they believed could continue the method of operation Mr. Hough had established during his time as CPO—is pretextual.

Plaintiff appears to believe that the summary judgement standard of drawing inferences in non-movant's favor means drawing the conclusion that Defendant's nondiscriminatory reason is pretextual from any assertion or proposed evidence. The Court is not required to make an inferential leap, for example, from the absence of documentation of formal training to the conclusion that no training took place. Plaintiff presents no argument that the mere observation of Mr. Hough would not be considered training. Plaintiff does not cite any evidence which demonstrates that a discriminatory reason more likely motivated the employer or that the employer's reasoning was not worthy of credence. It is Plaintiff's burden to raise a genuine issue of material fact to rebut the nondiscriminatory reason articulated by Defendant, and here,

Plaintiff failed to do so. The Court, therefore, grants summary judgment as to Plaintiff's claims regarding the 2014 hiring.

Plaintiff objects to the Report's recommendation of summary judgment with regards to his retaliation claim (Dkt. #39 at p. 6). To establish a prima facie case of non-employment retaliation under § 1981, a plaintiff must show: (1) he engaged in activity protected under § 1981; (2) he was subjected to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *See Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2015).

Plaintiff contends that the Magistrate Judge failed to make a determination regarding the non-employment aspect of the claim. Further, Plaintiff argues that the adverse actions he suffered are such that they would have dissuaded a reasonable person from engaging in the protected activity, namely, the filing of his lawsuit (Dkt. #39 at p. 7). Plaintiff referenced examples such as his team's jersey order being "messed up" and delayed, being "treated as if he had been lying" about the order, being told he could not scrimmage another team, being "reminded" to follow a rule regarding players playing times, being publicly accused of cheating, and his son being disciplined for fighting with other students (Dkt. #25 at pp. 29-30). Plaintiff argues his treatment was unique, but none of these assertions raise a genuine fact issue concerning an adverse action or, moreover, a causal link between protected activity and an adverse action. Therefore, summary judgment should be granted as to Plaintiff's retaliation claim.

## CONCLUSION

It is therefore **ORDERED** that Defendant's motion for summary judgment (Dkt. #22) is hereby **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted with respect to Plaintiff's claims concerning the 2014 hiring and Plaintiff's retaliation claim. Summary judgment is denied with respect to Plaintiff's claims concerning the 2013 CPO hiring.

**IT IS SO ORDERED.**
 **SIGNED this 9th day of January, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE